### 69970. ROBERTS v. SOUTHERN WOOD PIEDMONT COMPANY.
(328 SE2d 391)

Banke, Chief Judge.

The appellant homeowner sued the appellee manufacturer to recover in nuisance, trespass, and negligence for the latter's alleged interference with her use and enjoyment of her property. This appeal is from the grant of the appellee's motion for directed verdict.

The appellee is in the business of manufacturing utility poles from untreated logs which it purchases from various independent suppliers. The manufacturing plant involved in this case has been in existence since the 1930's. In 1948, the appellant purchased a home very close to the plant and began living there. In 1964, she purchased for rental purposes another house located across the street from the first. According to the appellant, her husband, her two sons, and a former tenant of the rental property, the noise and vibration resulting from the loading and unloading of logs at the plant, though tolerable prior to 1980, increased from 1980 to 1983 to such an extent as to interfere with their ability to sleep and hold normal conversations and to cause the walls of the two homes to shake and crack. The tenant, who had begun living in the rental home in 1968, testified that she was forced to move out in 1983 due to the noise and the deteriorating condition of the walls. A civil engineer called by the appellant testified by deposition that in his opinion, based on his inspection of the premises on two separate occasions in 1981 and 1982, the cracks in the walls had been caused by ground vibrations emanating from the defendant's plant. On the issue of damages, a general contractor retained by the appellant provided an estimate of the cost of repairing the two structures.

The appellee offered the testimony of its plant manager and various other employees to the effect that production at the plant had not increased from 1980 to 1983 but had in fact declined each year from 1978 through 1981. Also, the appellee presented expert opinion testimony to the effect that the cracks in the appellant's walls had resulted from the natural settlement of the soil rather than from vibration. In addition, one of the appellee's experts testified that a seismographic study conducted on or adjacent to the appellant's property in May of 1984 had revealed only negligible vibrations emanating from the plant, while revealing significantly greater vibrations from the passage of trains on a railroad line running between the plant and the appellant's property. *Held*:

1. "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." OCGA § 51-9-1. "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man." OCGA § 41-1-1.

The evidence presented by the appellant in the case was sufficient to authorize an inference that the operations at the appellee's plant had increased or otherwise changed beginning in 1980 so as to

create, for the first time, an unreasonable interference with the appellant's use and enjoyment of her property for residential purposes. As the evidence is always to be construed most strongly against the movant on motion for directed verdict, we consequently hold that the trial court erred in directing a verdict against the appellant on the nuisance claim. See generally OCGA § 9-11-50 (a); *Kalish v. King Cabinet Co.*, 140 Ga. App. 345 (3) (232 SE2d 86) (1976).

2. The plant did not constitute an "agricultural or farming operation" so as to preclude recovery pursuant to OCGA § 41-1-7 (b), which provides as follows: "No agricultural or farming operation, place, establishment, or facility, or any of its appurtenances or the operation thereof, shall be or shall become a nuisance, either public or private, as a result of changed conditions in or around the locality of such agricultural or farming operation, place, establishment, or facility if such agricultural or farming operation, place, establishment, or facility has been in operation for one year or more."

During his cross-examination of the appellant, counsel for the appellee sought and received a concession by her that the plant was located in an industrial area. Also, a real estate appraiser called by the appellee similarly testified that "everything [on the appellee's side] of the railroad track is industrial area . . ." We reject the appellee's assertion that the plant may be characterized as agricultural in nature merely because the logs which were purchased and processed by it may be considered as agricultural in origin. If the statute were subject to such a broad construction as that, then such purely industrial operations as meat packing or cotton textile manufacturing would fall within its ambit.

3. The court erred in admitting over the appellant's hearsay objection a letter purportedly written to the appellant by the appellee's "director of legal and environmental affairs," informing her that upon investigation the company had determined that its operations had not caused any damage to her property and further informing her that the company was not currently interested in a purported offer by her to sell her property. The appellee contends that the letter was admissible to impeach the appellant's denial that she had made such an offer to sell her property. However, leaving aside the utter lack of authentication as to the letter's authorship, the bulk of the material contained therein constituted self-serving hearsay, rendering the entire document inadmissible. See *Hortman v. Gresham*, 137 Ga. App. 253 (1) (223 SE2d 285) (1976).

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED MARCH 8, 1985.

*Michael W. Millians*, for appellant.

*William C. Reed*, for appellee.